## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DERWIN STEWART,

               **Plaintiff,**

                                     CIVIL ACTION
       vs.                              No. 05-3007-SAC

JIM LAUBACH, et al.,


               **Defendants.**


### MEMORANDUM AND ORDER

This matter is a civil action alleging discrimination and retaliation in violation of 42 U.S.C. § 2000e, 42 U.S.C. §2000e-3(a), 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), and K.S.A. 44-1001. Plaintiff commenced this action while incarcerated in the custody of the Kansas Department of Corrections.  He proceeds pro se and in forma pauperis.

Defendants Century Manufacturing, Inc. (Century), Jim Laubach, and Tom McKay filed a motion for summary judgment (Doc. 61), and plaintiff filed a response (Doc. 63).  The court has examined the pleadings and enters the following findings and order.

**Background**

The following facts are undisputed.

*Timeline*

Plaintiff commenced this action on January 11, 2005. He attached to his complaint a discrimination complaint dated September 23, 2003, filed with the Kansas Human Rights Commission (KHRC), in which he alleged "discrimination due to disparate impact treatment and discrimination and retaliation combined for filing grievances against KDOC and Century Manufacturing Co., for failure to adhere to policy and regulation of hiring as priority over all other inmates, when removed from job for official reasons." (Doc. 1, Attach.)

Century did not receive plaintiff's complaint addressed to the KHRC until it received the complaint that commenced the present action.

The KHRC responded to the plaintiff on September 26, 2003, stating it did not have jurisdiction to consider his claims. The KHRC referred plaintiff to the United States Department of Justice. (Doc. 1, Attach.) Century did not receive a copy of this letter.

Plaintiff again wrote to the KHRC on October 9, 2003, resubmitting his complaint and requesting the address of the Commissioner of the EEOC. (Doc. 62, Ex. 2.) Century did not receive a copy of this letter.

In a letter dated October 23, 2003, the KHRC responded and

provided plaintiff the address of the EEOC Kansas City District Office. Century did not receive a copy of this letter.

Plaintiff filed the charge of discrimination with the EEOC more than 30 days after he was notified that the KHRC terminated its processing of his charge by filing a charge of discrimination against Century with the EEOC on or about April 2, 2004. The charge was dated February 23, 2004, and alleged plaintiff's removal from his job on or about April 29, 2003. The EEOC issued a copy of the charge to Century on or about April 2, 2004, and Century responded to the charge.

On October 1, 2004, the EEOC issued a letter to plaintiff with a no cause finding in its dismissal and notice of rights. (Doc. 62, Exs. 5 and 6.) Century received a copy of that letter during the first week of October 2004.

Plaintiff filed the complaint in this matter more than 90 days after he received the EEOC dismissal and notice of rights letter.

*Century*

Century is a privately held company that specializes in the fabrication of acrylic and Lucite specialty custom made awards and advertising products. Its main fabrication facility is in Wichita, Kansas.

Kansas participates in the Private Industry Enhancement

Certification Program that enables private businesses to establish joint ventures with state and local corrections to produce goods with prisoner employees. In 1993, Century entered into an agreement with KDOC to open a private industry plant at the Ellsworth Correctional Facility (ECF), and in 1997 it opened a plant at the El Dorado Correctional Facility (EDCF). Under KDOC policy, this employment setting is considered a work release program. In such a program, a private employer has the discretion to hire those inmate employees it wishes to hire and cannot be required to hire any particular individual candidate.

By March 1999, Century had expanded its operations at EDCF, but in late September 2002, due to a slowdown in its business, Century consolidated its operations at the two prisons. By October 2003, 16 prisoners had been transferred from ECF to EDCF to work at Century.

Defendant McKay has been employed by Century since 1972. In November 1994, he assumed managerial responsibility of Century's plant at ECF. When that plant was closed in 2002, he transferred to Century's EDCF plant to manage acrylic manufacturing. Dale Frasier managed the tap handle manufacturing at the EDCF plant until he left employment with Century in July 2007.

Managers at Century received both inmate inquiries concern-

ing employment and contact from KDOC Unit Team Managers recommending inmates for employment. In addition, inmate employees sometimes recommended other inmates for employment.

When Century had no openings, McKay advised those inmates who inquired that no openings were available. If the prisoner completed a prison Form 9 or a job application seeking employment, that material was retained for approximately 12 months and was reviewed when an opening was available.

When an opening was available, defendant McKay reviewed the KDOC website to see the applicant's disciplinary history. Where there was a serious disciplinary violation, as defined by KDOC, the inmate was not considered for employment. Otherwise, McKay interviewed the inmate and considered recommendations from KDOC staff and other inmates. Inmates were hired based upon the inmate's skills, experience, and the interview.

*Plaintiff's employment*

Plaintiff was hired by Century at its EDCF plant on February 17, 1999, and worked in the boxing and assembly area until approximately March 10, 2000, when he was involved in an altercation with another inmate in the workplace. Both inmates were removed from their employment as a result.

Plaintiff was rehired by Century for its EDCF plant on or about March 20, 2003. He worked as a buffer until mid-May 2003

when he was involved in another altercation and again was removed from his employment.

The jobs held by plaintiff were lower-skill-level positions. During plaintiff's 2003 employment, McKay observed the plaintiff's work and did not consider him to be highly skilled.

On July 17, 2003, plaintiff filed an inmate grievance with KDOC officials. The grievance was not provided to Century, and Century officials were not aware of the grievance until served with the complaint in this matter. An attachment to the grievance states: "On June 27th, 2003, I went out and talked to Asst. Plant Manager Tom McKay about being reinstated to my job. Tom McKay stated that business was slow and that he could not justify placing someone on the payroll right now." (Doc. 1, Attach., Grievance #11241.)

McKay has no recollection of a message in May 2003 from plaintiff's Unit Team Manager advising that plaintiff was available for rehire. He does recall that sometime after that, plaintiff came to the Century facility and sought to return to work. McKay told him that Century did not need buffing workers at the time. At some later time, McKay was told by another prisoner that Stewart called him a derogatory name. McKay may have told that inmate that plaintiff should keep his mouth shut. McKay was told later by another prisoner that plaintiff did not

want to work as a buffer.  Stewart did not provide McKay with a completed application, and McKay did not receive a Form 9 or a recommendation to rehire Stewart.  (Doc. 62, Ex. 7, McKay affidavit.)

*Inmates hired by Century*

Century did not hire or rehire any prisoner for work at EDCF between May 9, 2003, and July 22, 2003.

Inmate Terry Hansard was hired by Century on May 1, 2000, while incarcerated at ECF.  McKay supervised Hansard there and considered Hansard's skills in machine maintenance, rotator, planner, and as a digital operator to be excellent.  Following Hansard's transfer to EDCF, he inquired about a job with Century in mid-July 2003 and was hired on July 23, 2003, based upon his work experience and his skills.  Plaintiff did not have the same skills and experience.

Hansard was the only inmate hired by Century at EDCF in July 2003.  Hansard is white.

In August 2003, Century hired three inmates at EDCF.  Two of the inmates hired were white, and one was African American.  No inmates were hired by Century at EDCF in September 2003.

In October 2003, Century hired four inmates at EDCF.  Three were white, and one was African American.

Century did not hire or rehire any inmates between November

2003 and January 2004.

In February 2004, Century hired ten inmates at EDCF. Five of these inmates were white, three were Hispanic, and two were African American.

In March 2004, Century hired five inmates at EDCF. Three were white, and two were African American.

In April 2004, Century hired seven inmates at EDCF. Five were white, and two were African American.

In May 2004, Century hired two inmates at EDCF. One was white, and one was African American.

In June 2004, Century hired two inmates at EDCF. One was white and one was African American.

In July 2004, Century hired two inmates at EDCF. Both were white.

In August 2004, Century hired three inmates at EDCF. One was white, and two were African American.

In September 2004, Century hired one inmate at EDCF. The inmate was white.

In October 2004, Century hired eight inmates at EDCF. Three were white, and five were African American.

In November 2004, Century hired seven inmates at EDCF. Two were white, and five were African American.

In December 2004, Century hired one inmate at EDCF. The

inmate was African American.

Defendant Laubach, President of Century, recalls that in late 2004 or early 2005, Frasier told him that an inmate employed by Century for over five years recommended the plaintiff for hire. Laubach avers he had no other conversation with any Century manager concerning rehiring plaintiff.

In January 2005, Century hired five inmates, including plaintiff, at EDCF. Two were white, one was Hispanic, and two were African American.

From May 9, 2003, to January 31, 2005, Century hired 61 inmates at EDCF. Thirty-two of the inmates were white, 4 were Hispanic, and 25 were African American.

After May 2003, McKay had no conversation with Frasier concerning an inquiry from Stewart or concerning rehiring him, until January 2005, when Frasier told McKay he was rehiring plaintiff.

Plaintiff's complaint with the EEOC is the only discrimination charge against Century filed by a prisoner at EDCF.

## Discussion

### Summary judgment standard

A motion for summary judgment is used to determine whether a trial is necessary. *Heideman v. South Salt Lake City,* 348

F.3d 1182, 1185 (10th Cir. 2003). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue of fact is material if it would affect the resolution of the lawsuit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party has the initial burden of providing the factual basis for its motion and identifying the pleadings, discovery, and admissions on file, together with affidavits, if any, which show there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 825 (10th Cir. 2008); Fed.R.Civ.P. 56(c).

If the moving party sustains that burden, the party opposing summary judgment has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The opposing party may not rest on the allegations contained in his complaint, but must come forward with specific facts showing a genuine factual issue for trial. *Anderson*, 477 U.S. at 249, 256; Fed.R.Civ.P. 56(e). "[T]he content of summary judgment evidence must be generally

admissible and ... if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.,* the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.,* 432 F.3d 1114, 1122 (10th Cir. 2005).

The court views the evidence in the light most favorable to the party opposing summary judgment. *Northern Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

## 1. Jurisdiction Under Title VII of the Civil Rights Act of 1964, As Amended, 42 U.S.C. §2000e et seq.

Defendants argue plaintiff's claims under Title VII are barred due to his failure to file a timely Charge of Discrimination with the EEOC and due to his failure to commence this action within 90 days from his receipt of a right to sue letter.

Plaintiff filed a Discrimination Complaint against KDOC and Century with the Kansas Human Rights Commission (KHRC) in a letter dated September 23, 2003. (Doc. 1, Ex., p. 17.)

The KHRC responded by letter on September 26, 2003, *id.*, p. 19, concluding it had no jurisdiction. In response to additional correspondence from plaintiff, the KHRC issued a second letter on October 23, 2003, *id.*, p. 23, again concluding it lacked jurisdiction over the matter. The first letter referred

plaintiff to the Department of Justice, and the second letter provided the address for the EEOC.

On February 23, 2004, plaintiff signed and dated a Charge of Discrimination against Century, which was filed with the EEOC on or about April 2, 2004, *id.*, p. 28. He alleged he was removed from his job on or about April 29, 2003, and claimed he had not been rehired because of his complaint of racial discrimination. The EEOC issued a copy of the charge to Century on or about April 2, 2004, and Century provided information to the EEOC and denied plaintiff's claims.

On April 9, 2004, the KHRC sent plaintiff a third letter, *id.*, p. 25, stating it could not file his complaint because it was received more than six months following the last alleged date of incident and was not timely under The Kansas Act Against Discrimination and the Kansas Age Discrimination in Employment Act.

On October 1, 2004, the EEOC issued a Dismissal and Notice of Rights, *id.*, p. 27. That notice advised plaintiff that he had ninety days from receipt of the notice to commence a lawsuit under federal law.

Prior to filing a civil action under Title VII, an individual must file a timely charge with the EEOC. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997), *cert.*

*denied*, 522 U.S. 935 (1997).

> "[S]uch charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." 42 U.S.C. §2000e-5(e)(1).

Plaintiff received the EEOC right to sue letter on October 1, 2004 (Doc. 63, p. 3). He executed the complaint in this action on December 30, 2004, and the complaint was received by the clerk of the court on January 3, 2005. Court records show the clerk of the court mailed plaintiff a deficiency notice on that date explaining the complaint could not be filed because he had failed to submit either the filing fee or a motion for leave to proceed in forma pauperis. Plaintiff executed a motion for leave to proceed in forma pauperis on January 7, 2005 (Doc. 3), and the complaint was filed on January 11, 2005, upon receipt by the clerk of the court.

Under precedent in the Tenth Circuit, the District of Kansas may require payment of the filing fee before formally "filing" a complaint. *See Jarrett v. U.S. Sprint Communications Co.,* 22 F.3d 256, 259 (10th Cir.), *cert. denied,* 513 U.S. 951 (1994). Therefore, even given the benefit of the application of

the prison mailbox rule,[1]  plaintiff did not timely file the complaint.  The failure to complete the requirements for filing an action until January 7, 2005, rendered the filing beyond the 90 days allowed to commence a civil lawsuit under Title VII.

**Claims Against Laubach and McKay as Individuals**

Plaintiff claims defendants Laubach and McKay, as individuals, discriminated against him, retaliated against him for use of administrative grievances, and, by failing to reassign or rehire him while rehiring and reassigning similarly situated white inmates, engaged in conduct that resulted in disparate impact and disparate treatment in violation of 42 U.S.C. §2000e, §2000e-3(a).

It is settled that an individual cannot be liable under Title VII, as "relief granted under Title VII is against the *employer*."  *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993)(internal quotations and citation omitted)(emphasis in original).  *See also Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996)("personal capacity suits against individual supervisors are inappropriate under Title VII").  Thus, to the extent plaintiff seeks to sue these defendants in their individual

---

[1]

*See Houston v. Lack*, 487 U.S. 266 (1988)(discussing the mailbox rule in federal court for prison inmates, whose submissions are deemed filed with the court on the date the inmate delivers the filing to the prison mail system.)

capacities under Title VII, his claims fail.

**Claim Under 42 U.S.C. § 1985(3)**

Plaintiff claims that Laubach, McKay, and Century discriminated against him and retaliated against him for filing a complaint and grievances. He also alleges disparate impact treatment and disparate treatment based on race resulted from defendants' conduct toward him and similarly situated African Americans, namely, failing to rehire or reassign him while reassigning and rehiring similarly situated white inmates. Finally, he claims KDOC and Defendant Roberts participated in a conspiracy with defendants.

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993). Section 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971).

Defendants assert plaintiff has failed to state a claim upon which relief may be granted. They contend the claim is based upon only conclusory statements. Defendants also contend

the undisputed facts show that (1) after May 2003, defendant McKay had no contact with Frasier concerning any inquiry from plaintiff until January 2005, when Frasier told McKay he was rehiring plaintiff; (2) that defendant Laubach's only conversation with a Century manager was in late 2004 or early 2005 when Frasier advised him that another prisoner had recommended rehiring plaintiff; and (3) that KDOC Unit Team Manger Harris did not believe the decision not to rehire plaintiff was based upon race. In addition, Century's records for the period between May 2003 and January 2005 reflect that 61 prisoners were hired to work in Century's operations at the EDCF with the following racial distribution: 32 white prisoners, 25 African American employees, and 4 Hispanic employees.

Plaintiff's response does not directly address these contentions, nor does he offer any evidence that reasonably suggests the existence of any conspiracy to deprive him of a protected right based upon a racially-motivated animus. At most, the information offered by plaintiff suggests that other prisoners were rehired after committing disciplinary infractions. On its face, plaintiff's response does not suggest these prisoners had been involved in an altercation in the workplace.

The court concludes no genuine issue of material fact is presented concerning the existence of a conspiracy. Even viewed

in the light most favorable to him, plaintiff's allegations are unsupported. The court concludes defendants are entitled to summary judgment on plaintiff's claim arising under 42 U.S.C. §1985(3).

**Plaintiff's claims under 42 U.S.C. §2000e, 42 U.S.C. §1981, and K.S.A. 44-1001, et seq**.

Plaintiff claims he was subjected to disparate treatment on the basis of his race by Laubach, McKay, and Century.[2] A disparate treatment claim arises under Title VII "where an employer 'has treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*,— U.S. ----, 129 S.Ct. 2658, 2672 (2009)(quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 985-86 (1988)).

To prevail on his disparate treatment claim, plaintiff must provide proof of discriminatory intent either by direct evidence or by circumstantial evidence of such intent under the burden-shifting framework from *McDonnell Douglas Corp. v. Green,* 411

---

[2]
Title VII "prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano,* ---U.S. ----, ----, 129 S.Ct. 2658, 2672 (2009).

U.S. 792 (1973).[3]

Because plaintiff does not advance direct evidence of discrimination, he must proceed under the *McDonnell Douglas* framework. Under that framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. If he can do so, "the defendant must offer a legitimate, non-[discriminatory] reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1170 (10th Cir. 2006) (citations omitted).

Under *McDonnell Douglas,* plaintiff must make out a *prima facie* case of employment discrimination by showing that he: 1) is a member of a protected class; 2) was qualified for the position; and 3) suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)(citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).

Plaintiff asserts that he was exonerated of the disciplin-

---

3

The Kansas Supreme Court has adopted the *McDonnell Douglas* burden-shifting analysis in employment discrimination cases. *Woods v. Midwest Conveyor Co.*, 648 P.2d 234 (Kan. 1982).

ary report against him for fighting in the summer of 2003, and he claims that under KDOC policy, he was entitled to reassignment to his job with priority over all other prisoners. He claims Century failed to reassign him, rehired white prisoners who had not been exonerated from disciplinary actions, did not rehire African Americans, told plaintiff work was too slow to justify hiring, and then hired a white prisoner shortly afterward. (Doc. 1, par. 4, 6, 15 ).

To establish a prima facie case, however, plaintiff must allege that he was qualified for an open position; that is, it will not suffice to point out that another individual was hired for any position. *See Simms v. State of Oklahoma*, 165 F.3d 1321, 1328 (10th Cir. 1999). Plaintiff has not made that allegation.

Next, despite plaintiff's contention that he was entitled to reinstatement in his position with Century under the KDOC General Order 19-101(II)(3),(4)(Doc. 42, Ex. 4), that provision does not support his position. At most, that policy statement provides that inmates in facility work assignments "who are unemployed due to no fault of their own (detail closing, etc.) shall be given priority over all inmates" and that inmates "who have been off the job because of illness, out to court, or other official reasons, shall be returned to their job, if it is

available, as soon as possible." *Id.*, p.2, ¶¶ 3-4.

The balance of plaintiff's allegations assert Century failed to reassign him with priority after he was exonerated from the discipline, that Century rehired white inmates who were not exonerated from misconduct while failing to rehire African American prisoners, and that Century first advised him his re-employment could not be justified due to business but shortly afterward hired a white prisoner. (Doc. 1, pp. 12-13.)

Defendants contend petitioner has not established a prima facie case because he fails to show he was qualified for an open position. Rather, Hansard, the inmate in question, first was hired on May 1, 2000, at Century's ECF plant. Hansard was highly skilled in machine maintenance, rotator, and planner, and as a digital operator. He was transferred from the ECF to the EDCF in mid-July 2003, and he was the only inmate hired by Century between May 9, 2003, and July 31, 2003.

In contrast, plaintiff was not qualified for the position for inmate Hansard was hired, and no other position was available. Plaintiff's bare allegations of large numbers of white inmates who were hired after being found guilty of disciplinary infractions is not supported by any allegation that the inmates were hired for positions for which plaintiff was qualified and for which he had applied. Therefore, he has not sustained his

burden of establishing a prima facie case of discriminatory conduct.

Next, to the extent plaintiff asserts a claim of disparate impact, he must establish that Century operates under employment practices that are "fair in form, but discriminatory in opera-tion." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). To establish a prima facie case of disparate impact discrimination, plaintiff must show that a "specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1231 (10th Cir. 1991).

A plaintiff may establish a prima facie case of disparate impact on statistical evidence. *See Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 307-08 (1977)("Where gross statis-tical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination."). However, any statistical analysis offered for this purpose "must involve the appropriate comparables, and must 'cross a threshold of reliability before it can establish even a prima facie case of disparate impact.'" *Ortega,* 943 F.2d at 1243 (internal citation omitted)(quoting *Allen v. Seidman,* 881 F.2d 375, 378 (7th Cir.1989)).

The present record simply does not present any evidence of

an identifiable employment practice by Century that resulted in a disparate impact on a protected group. Plaintiff has not specifically challenged any aspect of the hiring process or its impact, and his generalized complaint is insufficient to create a prima facie case.

Defendants argue that the decision not to rehire plaintiff upon his inquiry in June 2003 was based upon legitimate business considerations and was not discriminatory. They state that, based upon the volume of orders at the time, Century did not need additional employees for buffing, the job plaintiff performed during his earlier employment, and that the plaintiff was not qualified to perform the tasks for the position filled by inmate Hansard, who was hired on July 23, 2003.

These facts are essentially undisputed, and the court finds there is insufficient evidence concerning either Century's hiring practices or plaintiff's qualifications for the only available position to withstand the defendants' motion for summary judgment. The evidence shows that the decision not to rehire plaintiff in June 2003 was based upon legitimate business purposes and was not discriminatory.

**Plaintiff's claim of retaliation**

Plaintiff claims he was subjected to unlawful retaliation by defendants Laubach and Century for filing an administrative

grievance with KDOC and a complaint with the EEOC.

Plaintiff has no direct evidence of retaliatory conduct. Therefore, he again must proceed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*. *See Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1135 (10th Cir. 2005). Plaintiff bears the initial burden to establish a prima facie case of retaliation and must show: (1) his "protected opposition" under § 2000e-3(a); (2) an adverse employment action against him; and (3) a causal connection between the "protected opposition" and the adverse employment action. *Id.* at 1135-36.

Opposition is protected under § 2000e-3(a) only if it is opposition to a "practice made an unlawful employment practice by Title VII." *Petersen v. Utah Dept. of Corr.,* 301 F.3d 1182, 1188 (10th Cir. 2002)(internal punctuation omitted).

Plaintiff filed a written administrative grievance with the KDOC alleging the violation of a number of KDOC policies and stating his beliefs that he was entitled to reinstatement with priority over other inmates and that there was sufficient work available to justify his hiring. Thereafter, his Unit Team Manager prepared a written response. (Doc. 1, Attach., p. 6.) The response identified the subject matter of each policy statement cited by the plaintiff and concludes: "Inmate Stewart

may continue to advise Century Manufacturing of his interest in returning to work, but they do not have an obligation to re-hire him based upon the not guilty finding in his prison disciplinary case."

This grievance does not appear to involve an unlawful employment practice; however, even if it were viewed to oppose such a practice, plaintiff must establish the defendants knew of the content of his grievance and engaged in an adverse employment action because of that information. Plaintiff has not met that burden concerning his KDOC grievance.

Plaintiff also alleges retaliatory conduct occurred in response to his filing of a complaint with the EEOC. The complaint was dated February 23, 2004, and was issued to Century by the EEOC on April 2, 2004.

In order to establish the necessary causal connection, plaintiff may proffer "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999).

No causal connection can be shown between Century's failure to rehire plaintiff in 2003 and the EEOC complaint in 2004.

Plaintiff was interviewed by Century in October 2004 along with four other inmates. He complains that he had not been

hired by late December 2004; however, he was rehired by Century on January 14, 2005.

The period between the time Century learned of plaintiff's EEOC filing and the failure to rehire, however, does not itself support an inference of a causal connection. *Compare Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)(termination more than seven months after engaging in protected activity was not sufficient to prove causation); *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181-82 (10th Cir. 2006)(nine months between protected activity and adverse action was too remote to support causation); with *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004)(two to three month period was not sufficient to show causation in failure to hire case); *Ramirez v. Oklahoma Dep't. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994)(one and one-half month period between protected activity and adverse action may establish causation); *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)(two months and one week between adverse action and protected activity sufficient to support prima facie case); and *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 386 (10th Cir. 1984)(upholding finding of retaliation where termination came within two hours of protected activity).

Plaintiff must present other evidence to establish the

necessary causal connection between his EEOC complaint and Century's failure to hire him in late 2004.

Plaintiff alleges he was interviewed on October 20, 2004, and was told he would be hired within a few weeks. Two weeks later, other inmates interviewed at the same time were hired, and other inmates began employment by November 30, 2004. Plaintiff was told by Frasier that he would start the next week; however, in mid-December, Frasier was told plaintiff's package was lost. In mid-December 2004, plaintiff was moved to the housing area where Century inmate employees were housed. Plaintiff was advised on or about December 28, 2004, that he would be starting shortly thereafter and was the next to be hired. Other Century workers told plaintiff that a white inmate would begin employment on Wednesday, December 29, 2004.

Century responds that undisputed facts show it hired four inmates effective October 29, 2004, two with EEOC classification Black and two with EEOC classification White. In November 2004, it hired seven inmates, five with EEOC classification Black and two with EEOC classification White. In December 2004, Century hired one inmate with EEOC classification Black. Plaintiff was rehired effective January 14, 2005. He was the only inmate employee rehired during that period.

Defendants argue that, viewed in the light most favorable

to plaintiff, this evidence does not support a claim of retaliatory conduct. They point out that during part of that period, a KDOC employee told plaintiff his package was lost. Century did not hire any inmate employees after December 1 through the end of that month, and plaintiff was rehired in mid-January 2005.

The court agrees there is insufficient evidence of retaliation to overcome defendants' motion for summary judgment. First, plaintiff's EEOC complaint was received by Century in April 2004, several months before plaintiff was interviewed, and that timeframe does not support a finding of retaliatory conduct. Next, the undisputed facts show Century assured plaintiff he would be rehired and did so in mid-January 2005. Finally, while other inmates were hired in the interim, plaintiff has established no protected right to priority in hiring over other inmates.

## Conclusion

For the reasons set forth herein, the court concludes plaintiff's claims brought pursuant to Title VII are barred due to his failure to timely commence this action; that his claims under Title VII against defendants Laubach and McKay in their individual capacities fail; that he has not stated a claim for relief under 42 U.S.C. § 1985(3); that he has not stated a claim

for relief under 42 U.S.C. §2000e, et seq., 42 U.S.C. § 1981, or K.S.A. 44-1001, et seq., because he has not shown he was qualified for a position for which Century hired in July 2003 or between October and December 2004; and that he has failed to state a claim for relief under 42 U.S.C. §2000e-3(a) because he has not shown a causal connection between his pursuit of an administrative grievance and a charge with the EEOC and the fact he was not rehired by Century in June and July 2003 or between October and December 2004.

The court concludes defendants have established that no genuine issue of material fact is presented in this matter, and they are entitled to summary judgment.

IT IS, THEREFORE, BY THE COURT ORDERED the motion for summary judgment filed by defendants Century Manufacturing, Inc., Laubach, and McKay (Doc. 61) is granted.

IT IS FURTHER ORDERED defendants' motion to strike plaintiff's surreply (Doc. 66) is denied.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED**.

Dated at Topeka, Kansas, this 30th day of March, 2010.


                         S/ Sam A. Crow
                         SAM A. CROW
                         United States Senior District Judge